## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| **APRIL SAMP**, <br><br> Plaintiff, <br><br> v. <br><br> **TEGNA BROADCAST HOLDINGS, LLC d/b/a WOI-TV, TEGNA INC., SUSAN MCELDOON, PATTI DENNIS, and PAUL TRELSTAD**, <br><br> Defendants. | Case No. 4:20-cv-00323-CRW-SBJ <br><br><br> **ANSWER TO PETITION AND JURY DEMAND** |

Defendants TEGNA Broadcast Holdings, LLC d/b/a WOI-TV; TEGNA Inc.; Susan McEldoon; Patti Dennis; and Paul Trelstad ("Defendants"), for their Answer to Plaintiff's Petition and Jury Demand, state and allege as follows:

### INTRODUCTION

1.      This is an action under the Iowa Civil Rights Act, challenging Defendants' illegal age discrimination, gender discrimination, and retaliation against Plaintiff.

**Answer:**      Defendants admit that Plaintiff styles her claims as alleged. All remaining allegations in paragraph 1 are denied.

2.      Plaintiff April Samp is a resident of Dallas County, Iowa.

**Answer:**      Upon information and belief, Defendants admit the allegations in paragraph 2.

3.      Defendant TEGNA BROADCAST HOLDINGS, LLC d/b/a WOI-TV is a Delaware limited liability company doing business in Polk County, Iowa.

**Answer:**      Admitted.

1

4.      Defendant TEGNA Inc. is a Delaware corporation doing business in Polk County, Iowa.

**Answer:**      Admitted.

5.      Defendant Susan McEldoon is a resident of Texas.

**Answer:**      Denied. Admitted that McEldoon was formerly a resident of Texas and now resides in Florida.

6.      Defendant Patti Dennis is a resident of Colorado.

**Answer:**      Admitted.

7.      Defendant Paul Trelstad is a resident of Missouri.

**Answer:**      Admitted.

8.      The acts of which Plaintiff complains occurred in Polk County, Iowa.

**Answer:**      Defendants admit that, as drafted, the Petition raises allegations that purport to have occurred in Polk County. Defendants deny that these events occurred as alleged by Plaintiff. Defendants also deny any remaining allegations in paragraph 8.

## PROCEDURAL REQUIREMENTS

9.      On April 21, 2020, within 300 days of the acts of which she complains, Plaintiff filed with the Iowa Civil Rights Commission charges of employment discrimination and retaliation against Defendants.

**Answer:**      Admitted that Plaintiff filed a charge with the Iowa Civil Rights Commission on or about April 21, 2020, which document speaks for itself. Any remaining allegations in paragraph 9 are denied.

10.     On September 4, 2020, less than 90 days prior to the filing of this Petition, the Iowa

Civil Rights Commission issued an administrative release with respect to Plaintiff's charges

against Defendants.

**Answer:**     Admitted that the Iowa Civil Rights Commission issued a right-to-sue letter

to Plaintiff on or about September 4, 2020. Any remaining allegations in paragraph 10 are denied.

## FACTUAL BACKGROUND

11.     On August 17, 2014, Plaintiff April Samp started working as the News Director at

WOI-TV in Des Moines.

**Answer:**     Admitted.

12.     When April started, WOI-TV was owned by Nexstar Media Group.

**Answer:**     Admitted.

13.     Between August 2017 and March 2018, April served as interim General Manager

of WOI-TV.

**Answer:**     Defendants lack sufficient information to admit or deny the allegations and,

therefore, deny the same.

14.     During April's time as News Director, she formed a team that won the prestigious

Walter Cronkite National Award for Excellence in Political Journalism.  Team members also won

two Regional Edward R. Murrow Awards for Hard News Reporting and Feature Reporting.  Under

April's leadership, WOI-TV won four Regional Emmy Awards for the first time in more than 30

years.

**Answer:**     Defendants lack sufficient information to admit or deny the allegations and,

therefore, deny the same.

15.     In mid-September 2019, Nexstar merged with Tribune Media, which triggered the divestiture of WOI-TV to TEGNA Inc. Once the sale closed, WOI-TV was owned and operated by Defendants TEGNA BROADCAST HOLDINGS, LLC and TEGNA Inc. (collectively referred to as "TEGNA.")

**Answer:**     Admitted that TEGNA acquired WOI-TV on or about September 19, 2019. Any remaining allegations in paragraph 15 are denied.

16.     Following TEGNA's acquisition of WOI-TV, April reported to WOI-TV General Manager Mary Ann Johnson, TEGNA Vice President of News Ellen Crooke, and TEGNA Corporate News Director Patti Dennis.

**Answer:**     Admitted that Plaintiff reported to Mary Ann Johnson following TEGNA's acquisition. Any remaining allegations in paragraph 16 are denied.

17.     In addition to her formal reporting relationships, April also worked closely with TEGNA Senior Vice President Paul Trelstad, to whom the WOI-TV General Manager reported.

**Answer:**     Denied.

18.     In October 2019, TEGNA flew April, Johnson, WOI-TV General Sales Manager Jo McJunkin, and WOI-TV Creative Services Manager Andrea Garnant to the TEGNA corporate headquarters in Virginia for orientation meetings.

**Answer:**     Admitted.

19.     During the visit to Virginia, April became acquainted with Crooke.  Crooke wrote April notes about how glad TEGNA was to have her on their team and how glad Crooke was to work with April.

**Answer:**     Admitted that Plaintiff and Crooke were present at the meetings in Virginia. Any remaining allegations in paragraph 19 are denied.

20.     During the visit to Virginia, April told Crooke that she believed her most important job was being a mom.

**Answer:**     Denied.

21.     TEGNA fired McJunkin, a woman over 40 years old, while the WOI-TV employees were still in Virginia for TEGNA orientation.

**Answer:**     Admitted that McJunkin's employment ended during the meetings in Virginia when she was offered the opportunity to resign instead of her employment being terminated for misconduct, and she accepted. Any remaining allegations in paragraph 21 are denied.

22.     Later in October 2019, TEGNA fired Johnson, another woman over 40 years old.

**Answer:**     Admitted that TEGNA fired Johnson based on performance issues in October 2019. Any remaining allegations in paragraph 22, including that age had anything to do with Johnson's firing, are denied.

23.     After firing Johnson, TEGNA hired and/or contracted with Susan McEldoon to serve as General Manager of WOI-TV.

**Answer:**     Admitted that Susan McEldoon was hired as the interim General Manager on November 4, 2019. Any remaining allegations in paragraph 23 are denied.

24.     In October, April stopped reporting to Crooke.  From that time on, April reported to McEldoon and Dennis.

**Answer:**     Denied.

25.     McEldoon had never worked in the Des Moines news market and spent most of her time in Florida, Texas, or Chicago.

**Answer:** Admitted that McEldoon had not previously worked in the Des Moines market, that she did not reside in Des Moines and commuted from Florida to Iowa, and that she came out of retirement to serve as the interim General Manager. Any remaining allegations in paragraph 25 are denied.

26. During her time as WOI-TV General Manager, McEldoon typically was in Des Moines just two or three days per week.

**Answer:** Admitted that during the time she served as interim General Manager, McEldoon was expected to be at WOI three days a week but was often there four days a week. Any remaining allegations in paragraph 26 are denied.

27. When McEldoon started, April met with McEldoon and Senior Vice President Paul Trelstad to introduce them to the station. April presented the executives with a 12-page document describing WOI-TV's history and recently improved ratings.

**Answer:** Denied.

28. April warned McEldoon and Trelstad that WOI-TV had a major signal problem, as half of the viewing market could not receive the station over the air.

**Answer:** Denied.

29. April told McEldoon and Trelstad that she wanted to hire for several positions to further improve the station.

**Answer:** Admitted that Plaintiff and other department heads wanted to hire for new positions. Any remaining allegations are denied.

30. Neither McEldoon nor Trelstad seemed interested in the detailed information April provided. Trelstad merely mused that WOI-TV was a "ratings-challenged station."

**Answer:** Denied.

31.     April later approached McEldoon about contract negotiations for FEMALE ANCHOR.

**Answer:**     Admitted.

32.     April believed FEMALE ANCHOR was a key employee in the WOI-TV newsroom, so she was relentless in encouraging WOI-TV and TEGNA to pay the anchor accordingly.

**Answer:**     Denied.

33.     April told McEldoon that McEldoon needed to look at the station's budget because women, including FEMALE ANCHOR, were being paid less than men to do the same job.

**Answer:**     Admitted that Plaintiff expressed concerns to McEldoon about the compensation of FEMALE ANCHOR during negotiations for a new employment agreement. Any remaining allegations in paragraph 33 are denied.

34.     From mid-September 2019 until her termination, April raised concerns about WOI-TV's discriminatory pay practices to McEldoon, Trelstad, and Dennis.

**Answer:**     Denied as stated. See response to paragraph 33.

35.     McEldoon, Trelstad, and Dennis rebuffed April's attempts to achieve pay equality.

**Answer:**     Denied.

36.     After FEMALE ANCHOR'S 2019 contract negotiation, TEGNA paid FEMALE ANCHOR $80,000 per year and MALE ANCHOR $115,000 per year to perform the same job.

**Answer:**     Denied.

37.     Despite the pay disparity, FEMALE ANCHOR had more job responsibilities than MALE ANCHOR.

**Answer:**     Denied.

38.     Elections are a huge part of a local television station's operations.

**Answer:**     Admitted that election coverage is an important part of a local television station's work. Any remaining allegations in paragraph 38 are denied.

39.     On November 5, 2019, Iowa held regular city and school elections.

**Answer:**     Admitted.

40.     WOI-TV's Chief Engineer, a male, failed to provide any staff to assist the newsroom on the night of the election.

**Answer:**     Denied.

41.     The Chief Engineer's failure to prepare for the elections and provide staff to assist the newsroom had a negative impact on the station's coverage of the election.

**Answer:**     Denied.

42.     April worked at least 16 hours on election day.

**Answer:**     Defendants lack sufficient information to admit or deny the allegations and, therefore, deny the same.

43.     April texted McEldoon at the end of the night, expressing her frustration about engineering failing to provide staff for the election.

**Answer:**     Admitted that Plaintiff expressed frustration to McEldoon. Any remaining allegations in paragraph 43 are denied.

44.     Within days of the election, April asked McEldoon if she had talked to the Chief Engineer about election night.

**Answer:**     Admitted.

45.     McEldoon told April, "This is your problem.  This is something you need to fix."

**Answer:**     Denied.

46.     April told McEldoon there was an ongoing problem with engineering and asked if McEldoon would hold a meeting with April and the Chief Engineer.

**Answer:**     Denied.

47.     McEldoon responded, "This is just a good example of why men make better leaders than women; because they aren't so emotional."

**Answer:**     Denied.

48.     On December 16, 2019, Defendants fired April.

**Answer:**     Admitted that Plaintiff's employment was terminated on December 16, 2019. Any remaining allegations in paragraph 49 are denied.

49.     Defendants did not fire the Chief Engineer when they fired April.

**Answer:**     Admitted that the Chief Engineer was not fired in December 2019. Any remaining allegations in Paragraph 49 are denied.

50.     McEldoon told April, "We just don't think this newsroom is going to be successful under your future leadership."

**Answer:**     Admitted that words to this effect were included in McEldoon's statements to Plaintiff at the time Plaintiff's employment was terminated. Any remaining allegations in paragraph 50 are denied.

51.     April was the third woman over 40 years old at WOI-TV who Defendants fired in the three months following TEGNA's acquisition of the station.

**Answer:**     Denied.

52.     TEGNA replaced all three women with men.

**Answer:**     Denied.

53.     Susan McEldoon was an employee and/or agent of Defendants TEGNA BROADCAST HOLDINGS, LLC and/or TEGNA Inc., acting at all material times within the scope of her employment and/or agency.

**Answer:**     Admitted.

54.     Paul Trelstad was an employee and/or agent of Defendants TEGNA BROADCAST HOLDINGS, LLC and/or TEGNA Inc., acting at all material times within the scope of his employment and/or agency.

**Answer:**     Admitted.

55.     Patti Dennis was an employee and/or agent of Defendants TEGNA BROADCAST HOLDINGS, LLC and/or TEGNA Inc., acting at all material times within the scope of her employment and/or agency.

**Answer:**     Admitted.

## COUNT I
## VIOLATION OF THE IOWA CIVIL RIGHTS ACT
## SEX DISCRIMINATION

56.     Plaintiff repleads paragraphs 1 through 55 as if fully set forth herein.

**Answer:**     Defendants incorporate their prior responses as if fully set forth herein.

57.     Defendants discriminated against April in employment.

**Answer:**     Denied.

58.     April's sex was a motivating factor in Defendants' discrimination against her.

**Answer:**     Denied.

59.     As a result of Defendants' acts and omissions, April has in the past and will in the future suffer injuries and damages including, but not limited to, lost wages and benefits and emotional distress.

**Answer:**     Denied.

## COUNT II
## VIOLATION OF THE IOWA CIVIL RIGHTS ACT
## AGE DISCRIMINATION

60.     Plaintiff repleads paragraphs 1 through 59 as if fully set forth herein.

**Answer:**     Defendants incorporate their prior responses as if fully set forth herein.

61.     Defendants discriminated against April in employment.

**Answer:**     Denied.

62.     April's age was a motivating factor in Defendants' discrimination against her.

**Answer:**     Denied.

63.     As a result of Defendants' acts and omissions, April has in the past and will in the future suffer injuries and damages including, but not limited to, lost wages and benefits and emotional distress.

**Answer:**     Denied.

## COUNT III
## VIOLATION OF THE IOWA CIVIL RIGHTS ACT
## RETALIATION

64.     Plaintiff repleads paragraphs 1 through 63 as if fully set forth herein.

**Answer:**     Defendants incorporate their prior responses as if fully set forth herein.

65.     April engaged in protected activity when she opposed Defendants' discriminatory pay practices.

**Answer:**     Denied.

66.     Defendants discriminated and/or retaliated against April by firing her.

**Answer:**     Denied.

67.     April's protected activity was a motivating factor in Defendants' discrimination and/or retaliation against her.

**Answer:**     Denied.

68.     As a result of Defendants' acts and omissions, April has in the past and will in the future suffer injuries and damages including, but not limited to, lost wages and benefits and emotional distress.

**Answer:**     Denied.

## AFFIRMATIVE DEFENSES

Defendants set forth the following defenses and affirmative defenses. Defendants do not assume the burden of proof with respect to any matter at or which, pursuant to law, Plaintiff bears the burden.

1.     Defendants deny any allegation not specifically admitted in this Answer, including but not limited to all allegations in Plaintiff's "WHEREFORE" and conclusory clauses.

2.     Plaintiff's Petition fails to plead, allege, or state facts sufficient to state a claim upon which relief can be granted against Defendants.

3.     Plaintiff's claims are barred in whole or part by the applicable statute(s) of limitations.

4.     Plaintiff did not engage in protected activity under the Iowa Civil Rights Act or applicable law.

5.     Defendants' actions were taken for legitimate, non-discriminatory, non-retaliatory reasons.

6.     Plaintiff's claims are barred to the extent she did not exhaust her administrative remedies, including but not limited to the extent that any claims in the Petition exceed those asserted before the Iowa Civil Rights Commission.

7.     Defendants engaged in good faith efforts to comply with applicable law.

8.      Defendants affirmatively state that, even if Plaintiff is able to prove that a prohibited factor motivated any adverse employment action by any Defendant, Defendants would have taken the same action even absent such motivation and, therefore, Plaintiff's claims must fail.

9.      To the extent Plaintiff has failed to mitigate her damages, if any, she is barred from recovery, or any award of damages must be proportionately diminished.

10.     Any damages sustained by Plaintiff are the result of her own actions or inactions.

11.     Plaintiff's claims for relief, to the extent they state a claim, are subject to any applicable damages caps or limitations.

12.     Defendants reserve the right to supplement this Answer with additional defenses that may become available or apparent during the course of investigation, preparation, or discovery, and to amend this Answer accordingly.

13.     Subject to a reasonable opportunity for investigation or discovery, the claims and damages asserted in Plaintiff's Petition are barred, in whole or in part, by the after-acquired evidence doctrine.

WHEREFORE, Defendants request that the Court dismiss Plaintiff April Samp's Petition, enter judgment in favor of Defendants, and for such other and further relief as the Court deems just and appropriate.

Dated this 26th day of October, 2020.


By: _____

Bridget R. Penick (#AT6147)
bpenick@fredlaw.com
Kendra D. Simmons (AT12988)
ksimmons@fredlaw.com
**Fredrikson & Byron, P.A.**
505 East Grand Avenue, Suite 200
Des Moines, IA  50309
Phone: (515) 242-8900
Fax: (515) 242-8950

*Attorneys for Defendants*

## Certificate of Service


The undersigned certifies that on October 26, 2020, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with the system.


/s/ *Ellen Workman*
Ellen Workman